**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARLIN HERBST, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 5:17-cv-04008-MWB** |
| | ) | |
| v. | ) | **PLAINTIFF'S RESISTANCE TO** |
| | ) | **DEFENDANT GIVAUDAN** |
| BUSH BOAKE ALLEN INC., et al. | ) | **FLAVORS CORPORATION'S** |
| | ) | **MOTION FOR SUMMARY** |
| Defendants. | ) | **JUDGMENT** |
| | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |

Plaintiff Marlin Herbst, by and through his counsel of record, respectfully requests that this Court deny Defendant Givaudan Flavors Corporation's Motion for Summary Judgment (Doc. 95).

## TABLE OF CONTENTS

I.     **INTRODUCTION**................................................................................................1

II.    **LAW**.................................................................................................................2

     A.    **Legal Standard for Summary Judgment**...............................................2

     B.    **Iowa's Statute of Repose** ......................................................................2

III.    **ARGUMENT** ..................................................................................................4

     A.    **Givaudan's Knowledge and Fraudulent Concealment of the Hazards Of Its Diacetyl-Containing Butter Flavorings**...................................4

          a.    *What Givaudan Told American Popcorn and Plaintiff Marlin Herbst* ................................................................5

          b.    *1985 FFIDS*..................................................................7

          c.    *1991-Diacetyl Free Product* .......................................9

Case 5:17-cv-04008-LTS-KEM   Document 102   Filed 03/26/18   Page 1 of 25

**d.** *1992-1993-Givaudan's Internal Operating Procedures With Diacetyl,  Disease Within Its Own Plant and Investigative Task Force* ...................................................... **10**

**B.** **Givaudan's Intent to Deceive** ........................................................... **15**

**C.** **American Popcorn and Plaintiff Marlin Herbst Relied on Givaudan's Misrepresentations** ........................................................... **16**

**D.** **Givaudan's Fraudulent Concealment Substantially Cause Plaintiff Marlin Herbst's Harm—Specifically, His Irreversible Lung Disease** .......... **18**

**E.** *Daughetee* **is Not Dispositive** ........................................................... **19**

**IV.** **CONCLUSION** ........................................................... **20**

# I.    INTRODUCTION

Plaintiff Marlin Herbst previously worked at the American Popcorn plant, located at One Fun Place, Sioux City, Iowa from 1978 through 1993. During his employment at American Popcorn, Plaintiff thought he was making food and that it was safe. No one at "One Fun Place" had any idea that there was a potential hazard from food flavorings. Defendant Givaudan Flavoring Corporation ("Givaudan") sold a number of butter flavorings containing the chemical diacetyl to American Popcorn during Plaintiff's period of employment there. Givaudan described the flavorings it sold as containing ingredients that were "generally recognized as safe." Givaudan was required to send a material safety data sheet ("MSDS") with its products and those MSDSs gave no warning about the health hazards of the flavorings, stating only that its flavorings had the lowest hazard level of "1," and did not tell American Popcorn that respirators were required.

Both Plaintiff and American Popcorn were completely unaware that at the **same** time Givaudan was telling them its products were safe, Givaudan was fraudulently concealing and intentionally misrepresenting its knowledge that diacetyl was "harmful" and "capable of producing systemic toxicity;" that it had internally implemented mandatory safety precautions at its own plant requiring employees to wear respirators **at all times** in the presence of flavors that contained diacetyl; and, that it had lung disease within its own plant. Both Plaintiff and his employer relied on Givaudan's misrepresentations that its products were safe. As a result, Plaintiff was exposed to Givaudan's diacetyl-containing flavorings without respiratory protection and subsequently developed the irreversible lung disease bronchiolitis obliterans.

Now, despite fraudulently concealing and intentionally misrepresenting the hazards surrounding its products, Givaudan moves for summary judgment, arguing that Plaintiff's claims

1

are somehow barred by the 15-year Iowa Statute of Repose. Iowa law does not support this logic as Plaintiff's claims fall under an exception to the statute, which protects victims of fraudulent concealment and intentional misrepresentation. *See* Iowa Code Ann. § 614.1(2A). Givaudan's Motion must therefore be denied.

## II.    LAW

### A.  Legal Standard for Summary Judgment

The Eighth Circuit recognizes that "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990). Summary judgment is only appropriate where there is no genuine issue of material fact and the movants are entitled to judgment as a matter of law. *See*, *e.g.*, *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006). In deciding a motion for summary judgment, the court must consider all the evidence and the reasonable inferences that arise from it in the light most favorable to the nonmoving party. *Id.*

"As this Court often reminds the parties, the trial court's function in ruling on summary judgment is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there are genuine issues for trial." (Ex. 1, App. 003, 3/27/08 Order in *Vicki Stillmunkes v. Givaudan Flavors Corporation*, in the United States District Court for the Northern District of Iowa Cedar Rapids Division, Case No. C04-85-MWB, (Doc. 347) (Bennett, M.)(quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990).

### B.  Iowa's Statute of Repose

Iowa's statute of repose with respect to products is found at Iowa Code § 614.1(2A), and provides *inter alia*, that no action for personal injuries may be brought against a manufacturer,

supplier, or designer of a product sounding in design defect or failure to warn, test, or label the product more than fifteen (15) years after the product was first purchased. The statute has an exception, however, which is relevant to the facts of this case:

> This subsection **shall not apply** if the manufacturer, assembler, designer, supplier of specifications, seller, lessor, or distributor of the product **intentionally misrepresents facts about the product or fraudulently conceals information about the product and that conduct was a substantial cause of the claimant's harm.**

Iowa Code Ann. § 614.1(2A) (emphasis added). This exception was explored in-depth by the Eastern Division of this Court in *Baier v. Ford Motor Co.,* 2005 WL 928615 (N.D. Iowa Apr. 21, 2005). There, Magistrate Judge Jarvey conducted a thorough analysis of the exception and set forth the standard that "the issue in the statute of repose context is whether the defendant 'fraudulently conceal[ed] information about the product' that allegedly gives rise to their liability." *Id*. at *4, citing I.C.A § 614.1(2A).

In analyzing whether the statute of repose had passed, the *Baier* Court stated that the doctrine of fraudulent concealment is a form of equitable estoppel, which "prevents a defendant 'from asserting the bar of the statute on limitations' based on 'his agreement, misrepresentations, or conduct.'" *Id.* (internal citations omitted). The necessary elements of equitable estoppel are:

1) The defendant has made a false representation or has concealed material facts;

2) The plaintiff lacks true knowledge of the facts;

3) The defendant intended the plaintiff to act upon such representations; and,

4) The plaintiff did in fact rely upon such representations to his prejudice.

*Id*. at 4, quoting *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005).[1]

---

[1] Plaintiff suspects Givaudan may additionally try to confuse the issue and apply a statute of limitations analysis in support of its request for summary judgment based on the statute of repose. This Court should not be distracted by this attempt to confuse the two standards. Following the same analysis as in *Baier*, 2005 WL 928615 at *4, the issue

Ultimately, the *Baier* Court denied the defendant's motion for summary judgment on statute of repose grounds, holding that the facts taken in the light most favorable to the plaintiffs provided sufficient evidence showing the defendant's fraudulent concealment of known defects of its product. This Court should hold the exact same, because as explained below, the exception to the statute of repose for fraudulent concealment and intentional misrepresentation is fatal to Givaudan's argument for summary judgment. As such, its Motion must be denied.

## III. ARGUMENT

### A. Givaudan's Knowledge and Fraudulent Concealment of the Hazards of Its Diacetyl-Containing Butter Flavorings[2]

As explained in *Baier*, in order to prove the first element of fraudulent concealment, "the plaintiff must prove either (1) 'that the defendant affirmatively concealed the facts or' (2) 'a confidential or fiduciary relationship exists between the person concealing' the facts and 'the aggrieved party.'" *Id.,* citing *McClendon*, 569 N.W.2d at 385. Here, there is ample evidence of Givaudan's knowledge of the health hazards of its diacetyl-containing butter flavoring which it fraudulently concealed from Plaintiff and his employer, American Popcorn, sufficient to meet I.C.A § 614.1(2A)'s exception.

This Court is well versed on the story of Givaudan's fraudulent concealment.[3] Notwithstanding this Court's familiarity with Givaudan's fraudulent concealment of the hazards

---

in the statute of repose context is whether Givaudan "'fraudulently concealed information about [its] product' that allegedly gives rise to their liability," not whether Givaudan concealed the potential for a cause of action.

[2] The exception to Iowa Code §614.1(2A), requires that Plaintiff establish either Givaudan's fraudulent concealment or intentional misrepresentation of the hazards of Givaudan's diacetyl-containing flavorings. Iowa Code Ann. §614.1(2A)(emphasis added). Plaintiff's submitted evidence satisfies both. In an effort to avoid repetition, all references to fraudulent concealment necessarily include Givaudan's intentional misrepresentations as well.

[3] *See e.g., Ronald and Conley Kuiper v. International Flavors & Fragrances, Inc., et al.,* Case No. C06-4009-MWB; *Kevin Remmes v. International Flavors & Fragrances, Inc., et al.,* Case No. C04-4061-MWB; *Deborah and Steven Daughetee v. Chr. Hansen, Inc., et al.,* Case No. C09-4100-MWB; and, *David Stults and Barbara Stults v. International Flavors and Fragrances, Inc., et al.,* Case No. C 11-4077-MWB.

4

of its diacetyl-containing flavorings, Plaintiff provides a brief recitation of those facts establishing Plaintiff's claims fall under I.C.A.§614.1(2A)'s exception.

To summarize, while Givaudan—through its material safety data sheets, labels, and communications with American Popcorn through its salesperson—did not tell American Popcorn or its employees that exposure to diacetyl was "harmful" and "capable of producing systemic toxicity," it has known this information since at least 1985. It began selling a diacetyl-free product in 1991, and in 1992 initiated procedures to protect its own employees from diacetyl and discovered lung disease within its own plant all the while remaining silent on the issue to its customers and users of its products. All of these facts lead to the inescapable conclusion that Givaudan fraudulently concealed and intentionally misrepresented the dangers of its products. It is now equitably estopped from arguing that Plaintiff's cause of action is time-barred by the statute of repose.

### a. *What Givaudan Told American Popcorn and Plaintiff Marlin Herbst*

American Popcorn was in the business of making food and thought it was safe. The "One Fun Place" manufacturer tried to do everything it could to make sure it was aware of information to protect its employees. (Ex. 2, App. 0010, 3/19/08 Deposition of Greg Hoffman, p.79). American Popcorn relied on its manufacturers to provide accurate information regarding health hazards of their products. (Ex. 3, App. 0015, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.*, pp. 138-139). There was nothing more important to American Popcorn than its workers' health. *Id.*

Even though Givaudan sold diacetyl-containing flavorings to American Popcorn as early as 1988, there is no evidence that it provided **any material safety data sheets to American**

**Popcorn before 1993**.[4] And when it did, the material safety data sheets for Givaudan's diacetyl-containing butter flavorings failed to notify American Popcorn, or its employees, that Givaudan's products were "harmful;" "capable of producing systemic toxicity;" and required respiratory use.

| **What Givaudan's 1993 MSDSs Told American Popcorn and Plaintiff Marlin Herbst** |
|---|
| Health Rating of "1" |
| Inhalation: Inhalation is irritating to nose, throat and lungs. Inhalation: Nuisance mist or dust; high levels in air may be irritating. |
| Personal protective equipment: Protective gloves, chemical splash goggles |
| Engineering Controls: Provide adequate ventilation |

(Ex. 4, App. 0016-0031, 3/19/93 MSDSs). Givaudan's MSDSs did not identify diacetyl as an ingredient in its butter flavorings, instead citing "trade secrets." *Id.* And, as confirmed by American Popcorn, Givaudan's MSDSs did not provide warnings that alerted American Popcorn to the hazardous nature of its products. (Ex. 2, App. 0009, 3/19/08 Deposition of Greg Hoffman, p. 68).

Similarly, Givaudan's labels to American Popcorn contained **no warnings** but instead said that the ingredients were "generally recognized as safe." (Ex. 5, App. 0032; 0032a-f, 1991-1993 Labels (Flavor #s 202944, 247027 and 247028). Prior to 1993, this was the only information Givaudan told American Popcorn about its diacetyl-containing products, and that they were 'kosher.' (Ex. 6, App. 0038-39, 11/30/05 Deposition of Greg Hoffman, pp. 221-222) (*see also* Ex. 7, App. 0042, 4/18/90 Letter from Fries and Fries to Dale Hartshorn) Ex. 30, App. 0188, Specification Sheet for #202944); (Ex. 8, App.0044, 6/17/91 Letter from Fries & Fries to American Popcorn).

---

[4] To date, Givaudan has produced no MSDSs prior to March, 1993. Counsel for Plaintiff contacted counsel for Givaudan inquiring as to whether any prior MSDSs existed and were notified that none have been located.

As previously explained, at no point during Plaintiff's employment did American Popcorn think that they were making a food product that could hurt people. (Ex. 9, App.0049-0050, 12/1/05 Deposition of Dale Hartshorn, pp. 153-154):

> Q    And American Pop Corn makes microwave popcorn as one of its primary products?
>
> A    Yes.
> ---
> Q    Has there been any particular point in time in your career at American Pop Corn that you thought you were manufacturing a food product that could hurt people?
>
> A    No.

American Popcorn had "no clue" diacetyl could cause harm to its workers:

> Q    You said several times today that you've heard of diacetyl. During the period of the '90s, were you aware that diacetyl could cause serious lung injury to people that worked --
>                                    ---
> Q    (By Mr. Crick) -- at your place of employment?
>                         ---
> A    No clue, no.

(*Id*. at App. 0050, pp. 154-155). American Popcorn thought it was doing all of the "proper things that [it] needed to do to keep the building in a good, safe, usable fashion." (Ex. 6, App. 37, 11/30/05 Deposition of Greg Hoffman at, p. 213). Like American Popcorn, Plaintiff Marlin Herbst had no knowledge of the hazards surrounding Givaudan's diacetyl-containing flavorings. (Ex. 10, App. 0053-54, Affidavit of Marlin Herbst at ¶s 3-12).

### b.  1985 FFIDS

Even though Givaudan was not telling American Popcorn or its employees anything about the hazards caused by exposure to diacetyl, it knew by at least 1985 of the connection between diacetyl exposure and harm. Several years before Plaintiff was first exposed to

Givaudan's diacetyl-containing flavorings[5] at the American Popcorn plant, Givaudan learned from its trade association that diacetyl was "harmful" and "capable of producing systemic toxicity." (Ex. 11, App. 0056-0057, 1985 FFIDS). Givaudan was at all relevant times, a member of the Flavor and Extract Manufacturers Association (FEMA), a trade association for flavoring manufacturers that produced food flavorings. (Ex. 12, App. 0063-0064, 4/6/06 Deposition of Nancy Higley, pp. 9-11); (Ex. 13, App. 0074, 6/25/08 Deposition of John Hallagan, pp. 19-21).

In 1985, FEMA offered a research library as a service to its members. This library included a service called Flavor and Fragrance Ingredient Data Sheets (FFIDS) that contained information regarding the hazards of flavoring chemicals. The FFIDS for diacetyl stated that upon inhalation, diacetyl was "harmful" and "capable of producing systemic toxicity." (Ex. 11, App. 0057, 1985 FFIDS). Givaudan had access to health hazard information published by FEMA for its members, including access to the FFIDS for diacetyl **in 1985** and admitted its reliance on the health hazard classification. (Ex. 12, App. 0065-0066, 4/6/06 Deposition of Nancy Higley, pp.117-120); s*ee also* (Ex. 14, App. 00079-0080, 4/8/99 Letter from Nancy Higley to Dr. Flueckiger at GIV002531-2532)(emphasis added):

> With regard to the process of determining hazard classifications, ***I take full advantage of the RIFM/FEMA Flavor Fragrance-Ingredient Data Sheet Program (FFIDS). The FFIDS program has been in existence since the inception of-the U.S. MSDS regulation. In 1985, RIFM and FEMA commissioned a toxicology consulting firm to review the existing data for flavor and fragrance ingredients.*** The resulting 9 volumes of data provides statements relevant to making a health hazard determination. In general, the flavor industry utilizes these "peer reviewed" statements. The FFIDS update service is designed to be an integral part of the U.S. MSDS program to keep us informed of new data as required by law.

---

[5] To the best of his recollection, Plaintiff alleges that he was exposed to Givaudan's diacetyl-containing butter flavoring from 1991 to 1993.

*See also* (Ex.13, App. 0075, 6/25/08 Deposition of John Hallagan, pp. 22-25) (confirming FEMA provided the FFIDS for diacetyl in 1985 to flavor manufacturers for use in their formulation of material safety data sheets).

Givaudan did not show Bob Burns, Givaudan's only salesperson to American Popcorn, this FFIDs for diacetyl that Givaudan had possessed since 1985. (Ex. 15, App. 0089, 7/11/06 Deposition of Robert Burns, p. 43); (Ex. 12, App. 0065-0066, 4/6/06 Deposition of Nancy Higley, pp.117-120); (Ex. 14, App. 0079-0080, 4/8/99 Letter from Nancy Higley to Dr. Flueckiger at GIV002531-2532). As a result, neither American Popcorn nor Plaintiff ever saw the FFIDS for diacetyl. American Popcorn testified that it did not know that Givaudan had known since 1985 that diacetyl was "harmful" and "capable of producing systemic toxicity" and that that it would have liked to have known this information. (Ex. 3, App. 0014, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.*, pp. 134-135); (Ex. 11, App. 0057, 1985 FFIDS); (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶s11-12).

### c. *1991-Diacetyl Free Product*

Only six years after Givaudan was provided with the FFIDs for diacetyl, in 1991, and at the same time that Plaintiff was working with Givaudan's diacetyl-containing flavorings, Givaudan sold a butter flavor with no added diacetyl. (Ex. 16, App. 0092-93, Affidavit of David Bratton). This Givaudan product was sold to another manufacturer of popcorn products, Gold Medal Products. *Id*. Despite its knowledge from the 1985 FFIDS that diacetyl was "harmful" and "capable of producing systemic toxicity," Givaudan continued to sell its diacetyl-containing butter flavoring to American Popcorn, ignoring the health risks and focusing instead on its profits:

Q:    And then, again, the reason that you use these ingredients instead of just using butter is because of cost?

A.    Cost, and they're much more impactful in flavor than real butter.

(Ex. 17, App. 0096, 1/12/06 Deposition of David Bratton, pp. 118-119).

In 1991 alone, Givaudan sold at least 12,250 lbs of its more "profitable" flavorings to American Popcorn. (Ex. 18A, App. 0098A, Givaudan Sales Chart to American Popcorn);(Ex. 18, App. 0099, Givaudan Invoices to American Popcorn); (Ex. 19, App. 0110-0118 Stipulation of facts re: diacetyl content and Givaudan formulas).

### d. 1992-1993-Givaudan's Internal Operating Procedure With Diacetyl, Disease Within Its Own Plant And Investigative Task Force [6, 7]

In 1992, while Plaintiff was still working at American Popcorn, Givaudan established an internal set of safety procedures within its own plant that were required whenever liquid diacetyl **or a product where liquid diacetyl is present** is to be used. (Ex. 23, App. 0129, 8/13/92 Tastemaker Operational Procedures for Natural & Artificial Diacetyl Spray Drying)(emphasis added):

---

[6]    In 1992, Tastemaker, a partnership in which Givaudan's predecessor was a general partner, was confronted by a potentially significant health hazard issue of three workers diagnosed within bronchiolitis obliterans within its own plant in Cincinnati, Ohio. (Ex. 20, App. 0119, 11/17/92 Letter from Coroner's office to Tastemaker); (Ex. 21, App. 0120-0124, Handwritten notes re: 1992 cases). Givaudan said nothing about the disease within its own plant to American Popcorn. (Ex. 3, App. 0014, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.* p.134).

After the bronchiolitis obliterans outbreak within its own plant, in February of 1993, Givaudan created a task force to further investigate the problem. This task force included the President of the company as well as a company toxicologist and others. (Ex.22, App. 0125-0128, 2/18/93 Memorandum re: Occupational Health Concern).

[7]    Tastemaker was a partnership in which Givaudan's predecessor, Fries & Fries, Inc., was general partner. The partnership operated the plant until Fries and Fries (now Givaudan) took over in 1997. Givaudan's corporate representative, Daniel Larsen, has testified that Givaudan Flavors Corp. and Fries and Fries, Inc. are the same legal entity. (Ex. 39, App.0184-0186, 5/31/06 Deposition of Daniel Larsen, pp. 47:1-47:19, 63:11-17, 79:13-81:8).

10

> **Summary of Procedures**:
>
> **The following procedures must be followed during the usage of Diacetyl. This will reduce the risk of injury to personnel**.
>
> **Safety Equipment Needed:**
>
> Goggles
> **Full face respirator**
> Rubber gloves (chemical)
>
> 2.  **Whenever** liquid Diacetyl **or a product where liquid Diacetyl is present is to be used, a respirator** with chemical resistant gloves **must be worn**.
>
> 3.  Any room containing Diacetyl in a liquid state must be labeled respirator required.
>
> 5.  **Avoid heating** or flame at all times.
>
> 7.  Whenever material is in tank, lids must be closed.  If ventilation (mechanical) is not connected to tank or is unavailable, **a respirator must be used at all time while in the room**.

Notably, **after** Givaudan implemented its internal August, 1992 Operational Procedures it sold at least three (3) more shipments to American Popcorn, totaling 12,050 lbs of diacetyl-containing flavorings before it finally provided its **first** material safety data sheets to the plant. In total, Givaudan sold at least 26,750 lbs[8] to American Popcorn from August 13, 1992 till the end of Plaintiff's employment and said **nothing** about its mandatory procedures.[9]

> Q      And Mr. Zarro showed you the material safety data sheet for Butter Flavor 247027 and 247028.  Those indicated that no respiratory protection was required.  Did you observe that?

---

[8] Givaudan's sales records demonstrate sales totaling 29,440 lbs from August 13, 1992 till the end of Plaintiff's employment. (Ex. 18A, App. 0098A, Givaudan Sales Chart to American Popcorn).

[9] As it has done in the past, Givaudan may argue that its internal procedure for diacetyl and respirators was for "pure" diacetyl, not diacetyl in a mixture. However, that is both factually wrong and misleading. Givaudan's 1992 procedures specifically mandate respirators **when any material containing diacetyl is present**. This means that the persons working with the flavor sold to American Popcorn wore a respirator but the person at American Popcorn who opened and poured that product wore none. The procedures mandated by Givaudan should have been recommended to American Popcorn.

A       Yes, sir.

Q       And were you aware that at the Fries & Fries plant, that anytime that someone was in a room where diacetyl was present, respirators were to be worn?

A       I was not aware of that.

---

Q.      Givaudan, in their plant, was saying any time diacetyl was in the mix, a respirator is to be used. Did they ever tell you anything different?

---

THE WITNESS: No.

(Ex. 2, App. 0008; 0010, 3/19/08 Deposition of Greg Hoffman, pp. 62-63, 79); (Ex. 18, App. 100-108 Givaudan Invoices to American Popcorn); (Ex. 19, App. 0111-0118 Stipulation of facts re: diacetyl content and Givaudan formulas); (Ex. 4, App. 0016-0031, MSDSs).

Like American Popcorn, Plaintiff Marlin Herbst was completely unaware that he should have been wearing a respirator in the presence of diacetyl, much less that Givaudan had known since 1992 that respirators were mandatory in the presence of diacetyl. (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶4-10). Marlin Herbst was unaware that Givaudan's internal Operating Procedure must be followed during the usage of Diacetyl to reduce the risk of injury to personnel. (App. 0053 at ¶4). And, that "[a]ny room containing Diacetyl in a liquid state must be labeled respirator required;" "Avoid heating or flame at all times;" and, "Whenever material is in tank, lids must be closed. If ventilation (mechanical) is not connected to tank or is unavailable, a respirator must be used at all time while in the room." (App. 0054 at ¶s 7-9). Yet, the very purpose of the flavor, for microwave popcorn, meant that the product was to be heated. It was heated both by the consumer (for cooking) and at American Popcorn so that it could go through pipes and be mixed. (Ex. 15, App. 0086-0088 pp. 33-39).

Givaudan had plenty of opportunities to inform American Popcorn and its workers about the hazards of its diacetyl-containing flavorings. American Popcorn was in constant

12

communication with Givaudan regarding its products. Both Givaudan and American Popcorn even visited each other's plants on several occasions. (Ex. 24, App. 0131-0143, Compilation of Correspondence between American Popcorn and Givaudan and Notes re: American Popcorn's Visits to Givaudan Plant); (Ex. 6, App.0036, 11/30/05 Deposition of Greg Hoffman, p. 208); (Ex. 25, App. 0147, 3/19/08 Deposition of Dale Hartshorn, p. 55)(confirming Givaudan salesperson Bob Burns visited American Popcorn quarterly); (Ex. 9, App. 0048, 12/1/05 Deposition of Dale Hartshorn, p. 68). Despite these opportunities to inform American Popcorn and its workers, like Marlin Herbst, Givaudan said nothing. (Ex. 25, App. 0146, 3/19/08 Deposition of Dale Hartshorn, pp. 43-44).

The juxtaposition from what Givaudan was doing at its own plant **at the very same moment** versus what it told its customers and their employees, like American Popcorn and Marlin Herbst is staggering.

| **What Givaudan's 1992 Internal Operating Procedures Said** | **What Givaudan's 1993 MSDSs Told American Popcorn and Plaintiff Marlin Herbst** |
|---|---|
| The following procedures must be followed during the usage of Diacetyl. This will reduce the **risk of injury to personnel.** | Health Rating of "1" |
| The following procedures must be followed during the usage of Diacetyl. This will reduce the **risk of injury to personnel.** | Inhalation: Inhalation is irritating to nose, throat and lungs.<br><br>Inhalation: Nuisance mist or dust; high levels in air may be irritating. |
| **Safety Equipment Needed:**<br>**Full face respirator**<br><br>2. **Whenever** liquid Diacetyl **or a product where liquid Diacetyl is present is to be used, a respirator** with chemical resistant gloves **must be worn**. | Personal protective equipment: Protective gloves, chemical splash goggles |

13

| | |
|---|---|
| 3.      Any room containing Diacetyl in a liquid state must be labeled respirator required.<br><br>7.      Whenever material is in tank, lids must be closed.  If ventilation (mechanical) is not connected to tank or is unavailable, **a respirator must be used at all time while in the room**. | |
| 7.      Whenever material is in tank, lids must be closed.  If ventilation (mechanical) is not connected to tank or is unavailable, **a respirator must be used at all time while in the room**. | Engineering Controls:<br>Provide adequate ventilation |

(Ex. 4, App. 0016-0031, MSDSs); (Ex. 23, App. 0129, 8/13/92 Tastemaker Operational

Procedures for Natural & Artificial Diacetyl Spray Drying).

Givaudan even fraudulently concealed this information from Bob Burns, the salesman to

American Popcorn, so that Mr. Burns could not share these hazards with American Popcorn and

its employees.  Burns was never shown the Tastemaker Operational Procedures for handling

diacetyl and had no idea there were special safety precautions at Tastemaker for working around

diacetyl.  (Ex. 15, App. 0086-0088 pp. 33-39). No one from Tastemaker told him about the need

to follow these safety procedures when working with diacetyl, even though Givaudan knew that

the butter flavor sold to American Popcorn was a paste and was going to be heated.  (*Id*., *Cf*

Tastemaker Operational Procedures "Avoid heating or flame at all times.").  As a direct result,

Burns never had a conversation with American Popcorn about the need for respirators to be worn

when diacetyl was present or to avoid heating it at all times.  (*Id*. App. 0087-0088, pp. 35-38).

Burns never told American Popcorn they were using Givaudan's products improperly, (*Id*. App.

0084, p. 25); that inhaling fumes or dust from butter flavoring could cause severe lung disease,

(*Id*. App. 0085, p. 26); nor did he give any criticism to American Popcorn related to how they were handling Givaudan's butter flavoring.  (*Id*).

The evidence is abundantly clear that Givaudan knew both before and during Plaintiff's employment at the American Popcorn plant that diacetyl could be "harmful" and "capable of producing systemic toxicity;" that it had created a mandatory internal operational procedures for handling diacetyl; that its own workers had been diagnosed with bronchiolitis obliterans; and, that it had created a task force to investigate further.  Despite all of the above information, Givaudan fraudulently concealed and intentionally misrepresented its knowledge of the hazards of its diacetyl-containing butter flavorings from American Popcorn and its workers, including Marlin Herbst. This case presents even a stronger case for Iowa Code Ann. §614.1(2A)'s exception than the defendant's conduct in *Baier*.  Taking the evidence in the light most favorable to Plaintiff, at a minimum, there is a genuine issue of material fact as to whether Givaudan fraudulently concealed known facts about the hazards of its diacetyl-containing butter flavoring from American Popcorn and Marlin Herbst and therefore, Givaudan's motion should be denied.

### B.  Givaudan's Intent to Deceive

The third element for equitable estoppel/fraudulent concealment is that "the defendant intended the plaintiff to act upon such [false] representations."  *Baier*, at *7, citing *Christy*, 692 N.W.2d at 702.  This inquiry is focused on "whether the defendant intended to deceive the plaintiffs with respect to the product."  *Id*.  Here, as shown above, there is sufficient evidence to create a genuine issue of fact as to whether Givaudan engaged in fraudulent conduct, which as in *Baier*, next creates a genuine issue of material fact as to whether Givaudan intended to deceive its customers, such as American Popcorn, and end-users of its products, such as Plaintiff Marlin

Herbst, about the health hazards of its diacetyl-containing flavorings. *Baier* at 7. As such, summary judgment is not appropriate.

**C.** **American Popcorn and Plaintiff Marlin Herbst Relied on Givaudan's Misrepresentations**

Here, American Popcorn and its employees, including Plaintiff, had a right to rely on Givaudan's material safety data sheets. As a chemical manufacturer, Givaudan was governed by OSHA and its regulations that required it to issue adequate warnings to its customers. Specifically, the OSHA Hazard Communication Standard, 29 C.F.R. § 1910.1200, required Givaudan to evaluate and classify the products it sold, including butter flavors containing diacetyl, and then provide a material safety data sheet with each shipment. This Standard required that:

> Each material safety data sheet is to include the following:
>
> a.      The health hazards of the hazardous chemical, including signs and symptoms of exposure, and any medical conditions which are generally recognized as being aggravated by exposure to the chemical. 1910.1200(g)(2)(iv).
>
> b.      Any generally applicable precautions for safe handling and use which are known to the chemical manufacturer, importer or employer preparing the material safety data sheet, including appropriate hygienic practices, protective measures during repair and maintenance of contaminated equipment, and procedures for clean-up of spills and leaks. 1910.1200(g)(2)(viii).
>
> c.      The date of preparation of the material safety data sheet or the last change to it. 1910.1200(g)(2)(xi).
>
> d.      The chemical manufacturer, importer or employer preparing the material safety data sheet shall ensure that the information recorded accurately reflects the scientific evidence used in making the hazard determination. If the chemical manufacturer, importer or employer preparing the material safety data sheet becomes newly aware of any significant information regarding the hazards of a chemical, or ways to protect against the hazards, this new information shall be added to the material safety data sheet within three months. If the chemical is not currently being produced or imported the chemical manufacturer or importer shall

add the information to the material safety data sheet before the chemical is introduced into the workplace again.

(Ex. 26, App. 0152, 29 C.F.R. § 1910.1200(g)(5).

Under OSHA's requirements, Givaudan knew first and foremost that it should have provided material safety data sheets to American Popcorn prior to 1993. Secondly, when it finally did in 1993, Givaudan knew that its misrepresentations in its MSDSs would be passed on to its customers and their employees, such as Plaintiff, and knew that it had a duty to correctly relay the health hazards of its diacetyl-containing products. (Ex. 27, App. 0157, 12/16/08 Deposition of Fred Stults, p. 20).

As previously explained, American Popcorn tried to do everything it could to make sure it was aware of information to protect its employees. (Ex. 2, App. 0010, 3/19/08 Deposition of Greg Hoffman, p.79). American Popcorn relied on its manufacturers to provide accurate information regarding health hazards of their products.

> Q. Now, did you have any sense back during this entire time period that this was going on that Givaudan was looking into this and had a team of doctors working on it and were examining the effect that diacetyl had upon workers?
>
> A. Can you give me a time frame?
>
> Q. '92 to '95.
>
> A. No, I was not aware of that.
>
> Q. Would you have liked to have known that?
>
> A. Yes, sir.
>
> Q. And if they had told you there was any question about this material, would you have taken precautions for your workers?
>
> A. We would have taken appropriate precautions, yes.

> Q.    In other words, if they'd told you that this is possible, it's not been proven, but it's possible, would you have taken the precautions to protect your workers?
>
> A.    If it was possible that it could cause worker injury, absolutely. We would have taken additional precautions.
>
> Q.    **I mean, from your standpoint, is there anything more important than the health of your employees, Mr. Hoffman?**
>
> A.    **No, sir.**

(Ex. 3, App. 0015, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.* p. 138-139) (emphasis added). American Popcorn would not have risked its employees' safety:

> Q.    Would you have ever risked your employees' health working around butter flavor if you'd known of the dangers?
>
> A.    No, sir.

*Id.* at 128.

Like his employer, Plaintiff Marlin Herbst also relied upon Givaudan's misrepresentations to his prejudice. (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶s11-12). As a result, he now suffers from bronchiolitis obliterans. "Taking the evidence in the light most favorable to the plaintiffs, there is a genuine issue of material fact as to whether the plaintiffs relied on the allegedly fraudulent conduct." *Baier*, at *6. There is sufficient evidence for a jury to conclude that American Popcorn and Plaintiff relied upon Givaudan's misrepresentations that its diacetyl-containing products were safe. As such, Givaudan's Motion for Summary Judgment must be denied.

**D.   Givaudan's Fraudulent Concealment Substantially Caused Plaintiff Marlin Herbst's Harm—Specifically, His Irreversible Lung Disease**

Plaintiff Marlin Herbst has been diagnosed with bronchiolitis obliterans as a result of his exposures to diacetyl-containing flavorings while employed at the American Popcorn plant. (Ex. 10, App. 0054, Affidavit of Marlin at ¶13);(Ex. 28, App. 0159-0181, Affidavit of Dr. Charles

Pue, with accompanying reports). As detailed above, American Popcorn and Plaintiff relied on Givaudan to share its knowledge regarding the hazards of its diacetyl-containing butter flavorings. Had Givaudan properly warned American Popcorn and its employees that it knew that diacetyl was "harmful" and "capable of producing systemic toxicity" and that respirator use was mandatory in the presence of diacetyl, Marlin Herbst would have taken steps to protect himself. (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶ 11). Had Marlin Herbst known of said dangers, he would have worn a respirator around Givaudan's diacetyl-containing flavorings. (*Id*. at ¶11). Instead, he developed bronchiolitis obliterans.

Like in *Baier*, there is more than sufficient evidence to create a genuine issue of material fact as to whether Givaudan's fraudulent concealment substantially caused Plaintiff's harm. *Baier* at 7, ("[i]n Iowa, questions of causation are for the jury") (citing *Rowson v. Kawaski Heavy Industries, Ltd*., 866 F.Supp. 1221, 1238 (N.D. Iowa 1994)(citing *Nichols v. Westfield Indus., Ltd*. 380 N.W.2ed 293)(Iowa 1985); *see also Pelster v. Ray*, 987 F.2d, 514, 524 (8th Cir. 1993)("[t]o satisfy the element of causation, a plaintiff need not prove that the defendant's conduct was the only cause, the necessary cause or even the most important cause of the plaintiffs' damages. The law requires that a plaintiff only show that the defendant's conduct constituted a substantial factor in producing the plaintiff's injury."). Givaudan's motion should be denied.

### E. *Daughetee* is Not Dispositive

Lastly, Givaudan cites to this Court's prior ruling in *Daughetee v. Chr. Hansen, Inc.*, 960 F.Supp.2d 849 (2013) throughout its Motion for Summary Judgment. However, *Daughetee* is not dispositive to the present Motion. There, the issue before this Court was not whether the statute of repose did not apply due to Givaudan's fraudulent concealment, but instead, whether

diacetyl was considered to be a "harmful material" within the meaning of a different subsection to the statute:

> The Daughetees do not dispute that their claims fall within the ambit of this statute of repose. Rather, they argue that their claims are allowed by an exception provided for in the statute. Specifically, the exception in § 614.1(2A)(b)(1) for the discovery of latent disease caused by exposure to a "harmful material."

*Id.* at 878. Because this Court did not address the argument Plaintiff raises here, Givaudan's reliance on *Daughetee* is without merit.

## IV.  CONCLUSION

Givaudan's Motion for Summary Judgment must be denied.  As shown above, as in *Baier*, Plaintiff has established that Givaudan 'fraudulently conceal[ed] information about the product' that allegedly gives rise to their liability." (2005 WL *4). At no time during his employment did Plaintiff—or his employer American Popcorn—know that Givaudan's diacetyl-containing flavorings were "harmful" and "capable of producing systemic toxicity," or that a respirator was required.  Instead they were told that its products were safe, and no respirator was required.  Iowa Code Ann. § 614.1(2A prohibits Givaudan from being rewarded for fraudulently concealing and intentionally mispresenting information regarding the hazards of its products that substantially caused Plaintiff Marlin Herbst's harm.

Under these facts, considered in the light most favorable to Plaintiff, summary judgment simply cannot be granted. At the very least, Plaintiff has shown there are genuine issues of material fact remaining as to what Givaudan knew about the hazards from exposure its diacetyl containing flavorings and what Givaudan told American Popcorn.  As there are genuine issues remaining for trial, Plaintiff Marlin Herbst respectfully requests that this Court allow oral argument on Plaintiff's Resistance if the Court deems necessary and deny Givaudan's Motion for Summary Judgment, and for such further relief as this Court deems just and proper.

Respectfully submitted,

*s/ J'Nan C. Kimak*
KENNETH B. McCLAIN (admitted pro hac vice)
J'NAN C. KIMAK (admitted pro hac vice)
ANDREW K. SMITH (admitted pro hac vice)
MICHAEL S. KILGORE (admitted pro hac vice)
NICHELLE L. OXLEY (admitted pro hac vice)
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050
(816) 836-8699 fax
kbm@hfmlegal.com
jck@hfmlegal.com
aks@hfmlegal.com
msk@hfmlegal.com
nlo@hfmlegal.com

AND

DENNIS M. McELWAIN          AT0005253
JAY M. SMITH                       AT0007387
SMITH & McELWAIN LAW OFFICE
505 5th Street, Suite 530
Sioux City, Iowa 51101
(712) 255-8094
(712) 255-3825 fax
smitmcel@aol.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this26th day of March, 2018, I electronically filed the foregoing with the Court using the Court's CM/ECF system which sends notification of same to all counsel of record also listed below:

*s/ J'Nan C. Kimak*

**ATTORNEY FOR PLAINTIFFS**

Robert M. Slovek
Matthew E. Enenbach
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
(402) 346-1148 fax
Robert.Slovek@KutakRock.com
matthew.enenbach@kutakrock.com

and

Kimberly E. Ramundo
Stephen J. Butler
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 352-6587
(513) 251-4771
Kim.Ramundo@thompsonhine.com
Steve.butler@thompsonhine.com
**ATTORNEYS FOR GIVAUDAN**
**FLAVORS CORPORATION**

Douglas L Phillips
Klass Law Firm, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Ste. 290
Sioux City, IA 51106
(712) 252 1866
(712) 252 5822 fax
phillips@klasslaw.com

and

Jason Meyer
Christopher J. Mulvaney
Gordon & Rees
101 West Broadway, Suite 2000
San Diego, CA 92101
619-270-7858 Telephone
(619) 696-7124 Facsimile
jmeyer@gordonrees.com
cmulvaney@gordonrees.com
**ATTORNEYS FOR EMORAL, INC.**