**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

MARLIN HERBST,          )
                              )
          **Plaintiff,**    )    **Case No. 5:17-cv-04008-MWB**
                              )
**v.**                      )    **PLAINTIFF'S STATEMENT OF**
                              )    **ADDITIONAL MATERIAL FACTS**
**BUSH BOAKE ALLEN INC., et al.**    )    **IN SUPPORT OF PLAINTIFF'S**
                              )    **RESISTANCE TO DEFENDANT**
          **Defendants.**    )    **GIVAUDAN FLAVORS**
                              )    **CORPORATION'S MOTION FOR**
                              )    **SUMMARY JUDGMENT**

---

Pursuant to L.R. 56.01(b)(3), Plaintiff submits his Statement of Additional Material Facts in conjunction with Plaintiff's Resistance to Givaudan's Motion for Summary Judgment:

### AMERICAN POPCORN AND PLAINTIFF MARLIN HERBST

1.    American Popcorn is located at One Fun Place, Sioux City, Iowa and makes the Jolly Time brand microwave popcorn using butter flavoring. (Ex. 9, App. 0050, 12/1/05 Deposition of Dale Hartshorn, pp. 153-154).

2.    American Popcorn thought it was making food, and that it was safe. (Ex. 9, App. 0049-0050, 12/1/05 Deposition of Dale Hartshorn, pp. 153-155).

3.    Plaintiff Marlin Herbst worked at the American Popcorn plant from 1978 through 1993. *See* Defendant's Appendix at A003.

4.    During his employment at American Popcorn, Marlin Herbst thought they were making food and that it was safe. (Ex. 10, App. 0053, Affidavit of Marlin at ¶2).

5.    During his employment at American Popcorn, Marlin Herbst was exposed to diacetyl-containing butter flavorings. (Ex. 28, App. 0159-0181, Affidavit of Dr. Charles Pue, with accompanying reports).

6.　Plaintiff Marlin Herbst had no knowledge of the hazards surrounding Givaudan's diacetyl-containing flavorings. (Ex. 10, App. 0054, Affidavit of Marlin at ¶12).

7.　Plaintiff Marlin Herbst has been diagnosed with bronchiolitis obliterans as a result of his exposures to diacetyl-containing flavorings while employed at the American Popcorn plant. (Ex. 10, App. 0054, Affidavit of Marlin at ¶13); (Ex. 28, App. 0159-0181, Affidavit of Dr. Charles Pue, with accompanying reports).

## GIVAUDAN CORPORATE AND NAME HISTORY

8.　Defendant Givaudan was known as Fries & Fries, Inc. from June 1990 until April 1997 when it changed its name to Tastemaker Corp. (Ex. 29, App.0184a-b, 5/31/06 Deposition of Daniel Larsen, pp. 40-41). In June 1997 the entity was acquired by the Swiss company Givaudan and its name was changed to Givaudan-Roure Flavors Corporation. In 2000 the name was changed again to Givaudan Flavors Corporation, the current name. (*Id*. App 0184 at pp. 46-47). The corporate entity Givaudan was a general partner in a partnership called Tastemaker (Collectively these names are all called "Givaudan"). (*Id*. at App. 0185 pp. 63-65).

## GIVAUDAN MATERIAL SAFETY DATA SHEETS AND LABELS

9.　Givaudan did not provide American Popcorn with material safety data sheets for its diacetyl-containing flavorings prior to March, 1993. (Ex. 4, App. 0016-0031, MSDSs).

10.　The Givaudan material safety data sheets for the butter flavorings provided to American Popcorn had a health hazard rating of "1." (Ex. 4, App. 0016-0031, MSDSs).

11.　The Givaudan material safety data sheets for the butter flavorings provided to American Popcorn did not mention the need for respirator use. (Ex. 4, App. 0016-0031, MSDSs).

12.     The Givaudan material safety data sheets for the butter flavoring provided to American Popcorn did not even identify diacetyl as an ingredient in its butter flavorings, instead citing "trade secrets". (Ex. 4, App. 0016-0031, MSDSs).

13.     American Popcorn's Vice President of Production, Greg Hoffman, testified that Givaudan's MSDSs did not provide warnings that alerted American Popcorn to the hazardous nature of its products. (Ex. 2, App. 0007; 009, 3/19/08 Deposition of Greg Hoffman, p. 7, 68):

> Q     Okay. You also see under appropriate hygienic practices it says, Avoid breathing fumes. Can you give me your understanding of how you would
> respond to that?
>
> A     Given the rating and -- and given the other directives within this MSDS, we did not take that as a mandate to -- or a communication to -- to
> be absolutely careful not to inhale the fumes.

14.     The label on the Givaudan packages of butter flavoring sold to American Popcorn contained no warnings but instead said that the ingredients were "generally recognized as safe." (Ex. 5, App. 0032; 0032a-f, 1991;1993 Labels (Flavor #s 202944, 247027 and 247028).

15.     Prior to 1993, the only information Givaudan told American Popcorn about its diacetyl-containing products was that they were 'generally recognized as safe' and 'kosher.' (Ex. 6, App. 0038-39, 11/30/05 Deposition of Greg Hoffman, pp. 221-222); (*see also* Ex. 7, App. 0042, 4/18/90 Letter from Fries and Fries to Dale Hartshorn); (Ex. 30, App. 0188, Specification Sheet for #202944); (Ex. 8, App.0044, 6/17/91 Letter from Fries & Fries to American Popcorn).

## AMERICAN POPCORN AND PLAINTIFF MARLIN HERBST

16.     American Popcorn tried to do everything it could to make sure it was aware of information to protect its employees. (Ex. 2, App. 0010, 3/19/08 Deposition of Greg Hoffman, p. 79).

17.     At no point during Plaintiff's employment did American Popcorn think that they were making a food product that could hurt people.  (Ex. 9, App.0049-0050, 12/1/05 Deposition of Dale Hartshorn, pp. 153-154):

> Q     And American Popcorn makes microwave popcorn as one of its primary products?
>
> A     Yes.
>
> Q     Has there been any particular point in time in your career at American Popcorn that you thought you were manufacturing a food product that could hurt people?
>
> A     No.

18.     American Popcorn had "no clue" diacetyl could cause lung disease in its workers, like Plaintiff:

> Q     You said several times today that you've heard of diacetyl.  During the period of the '90s, were you aware that diacetyl could cause serious lung
> injury to people that worked --
>                         ---
> Q     (By Mr. Crick) -- at your place of employment?
>                         ---
> A     No clue, no.

(*Id*. at App. 0050, pp. 154-155).

19.     American Popcorn thought it was doing all of the "proper things that [it] needed to do to keep the building in a good, safe, usable fashion."  (Ex. 6, App. 37, 11/30/05 Deposition of Greg Hoffman at, p. 213).

20.     Plaintiff Marlin Herbst had no knowledge of the hazards surrounding Givaudan's diacetyl-containing flavorings.  (Ex. 10, App. 0053-54, Affidavit of Marlin Herbst at ¶¶ 3-12).

4

## FLAVOR AND EXTRACT MANUFACTURERS ASSOCIATION AND ITS FLAVOR OR FRAGRANCE INGREDIENT DATA SHEETS

21.     The Flavor and Extract Manufacturers Association (FEMA) is and/or was, at all times relevant herein, a trade association for flavoring manufacturers including Givaudan.  (Ex. 12, App. 0063-0064, 4/6/06 Deposition of Nancy Higley, pp. 9-11); (Ex. 13, App. 0074, 6/25/08 Deposition of John Hallagan, pp. 19-21).

22.     Defendant Givaudan was at all relevant times, a member of the Flavor and Extract Manufacturers Association (FEMA), a trade association for flavoring manufacturers that produced food flavorings.  (Ex. 12, App. 0063-0064, 4/6/06 Deposition of Nancy Higley, pp. 9-11); (Ex. 13, App. 0074, 6/25/08 Deposition of John Hallagan, pp. 19-21).

23.     FEMA published for its members Flavor or Fragrance Ingredient Data Sheets (FFIDS) which contained health hazard information concerning chemicals which may be used by its members.  (Ex. 11, App. 0057, 1985 FFIDS).

24.     In 1985, FEMA published a FFIDS for diacetyl which stated that inhalation of diacetyl was "harmful" and "capable of producing systemic toxicity."  (Ex. 11, App. 0057, 1985 FFIDS).

25.     Givaudan had access to health hazard information published by FEMA for its members, including access to the FFIDS for diacetyl **in 1985** and admitted its reliance on the health hazard classification.  (Ex. 12, App. 0065-0066, 4/6/06 Deposition of Nancy Higley, pp. 117-120); s*ee also* (Ex. 14, App. 00079-0080, 4/8/99 Letter from Nancy Higley to Dr. Flueckiger at GIV002531-2532) (emphasis added):

> With regard to the process of determining hazard classifications, ***I take full advantage of the RIFM/FEMA Flavor Fragrance-Ingredient Data Sheet Program (FFIDS). The FFIDS program has been in existence since the inception of the U.S. MSDS regulation. In 1985, RIFM and FEMA commissioned a toxicology consulting firm to review the existing data for flavor and fragrance ingredients.*** The resulting 9

volumes of data provides statements relevant to making a health hazard determination. In general, the flavor industry utilizes these "peer reviewed" statements. The FFIDS update service is designed to be an integral part of the U.S. MSDS program to keep us informed of new data as required by law.

*See also* (Ex.13, App. 0075, 6/25/08 Deposition of John Hallagan, pp. 22-25) (confirming FEMA provided the FFIDS for diacetyl in 1985 to flavor manufacturers for use in their formulation of material safety data sheets).

26.     Givaudan did not show Bob Burns, Givaudan's only salesperson to American Popcorn, this FFIds for diacetyl that Givaudan had possessed since 1985. (Ex. 15, App. 0089, 7/11/06 Deposition of Robert Burns, p. 43); (Ex. 12, App. 0065-0066, 4/6/06 Deposition of Nancy Higley, pp. 117-120); (Ex. 14, App. 0079-0080, 4/8/99 Letter from Nancy Higley to Dr. Flueckiger at GIV002531-2532).

27.     Neither American Popcorn nor Plaintiff ever saw the FFIDs for diacetyl or knew that diacetyl was "harmful" and "capable of producing systemic toxicity." (Ex. 3, App. 0014, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.*, pp. 134-135); (Ex. 11, App. 0057, 1985 FFIDS); (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶¶ 11-12).

28.     American Popcorn testified that it did not know that Givaudan had known since 1985 that diacetyl was "harmful" and "capable of producing systemic toxicity" and that that it would have liked to have known this information. (Ex. 3, App. 0014, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.*, pp. 134-135); (Ex. 11, App. 0057, 1985 FFIDS).

## GIVAUDAN MADE A BUTTER FLAVOR FOR POPCORN THAT CONTAINED NO ADDED DIACETYL

29.     At least by 1991, Givaudan developed and sold a butter flavoring which did not contain diacetyl as an added ingredient. Ex. 16, App. 0092-93, Affidavit of David Bratton).

6

This Givaudan product was sold to another manufacturer of popcorn products, Gold Medal Products. *Id*.

30. Givaudan made other butter flavors with diacetyl because it was cheaper than using real butter:

> Q: And then, again, the reason that you use these ingredients instead of just using butter is because of cost?
>
> A. Cost, and they're much more impactful in flavor than real butter.

(Ex. 17, App. 0096, 1/12/06 Deposition of David Bratton, pp. 118-119).

31. In 1991 alone, Givaudan sold at least 12,250 lbs of its more "profitable" flavorings to American Popcorn. (Ex. 18A, App. 0098A, Givaudan Sales Chart to American Popcorn);(Ex. 18, App. 0099, Givaudan Invoices to American Popcorn); (Ex. 19, App. 0110-0118 Stipulation of facts re: diacetyl content and Givaudan formulas).

## GIVAUDAN SAFETY REQUIREMENTS REGARDING DIACETYL

32. At least by August 13, 1992, Givaudan had established a set of safety procedures for working around **any amount of diacetyl**. Givaudan required, among other things, that

> a. The following procedures *must be followed during the usage of Diacetyl. This will reduce the risk of injury to personnel*.
>
> b. Safety equipment needed: goggles, full face respirator, rubber gloves (chemical);
>
> c. 2. *Whenever liquid Diacetyl or a product where liquid Diacetyl is present is to be used, a respirator with chemical resistant gloves must be worn*.
>
> d. 3. Any room containing diacetyl in a liquid state must be labeled respirator required;
>
> d. 5. Avoid heating or flames at all times.

e.     7.  Whenever material is in any tank, lids must be closed.  If ventilation

(mechanical) is not connected to tank or is unavailable, a respirator must

be worn at all times while in the room;

(Ex. 23, App. 0129, 8/13/92 Tastemaker Operational Procedures for Natural & Artificial

Diacetyl Spray Drying) (emphasis added).  The respirator required by Givaudan was a full face

respirator. *Id.*

33.     After Givaudan implemented its August, 1992 internal Operational Procedures,

Givaudan sold at least three (3) more shipments to American Popcorn, totaling 12,050 lbs of

diacetyl-containing flavorings before it finally provided its **first** material safety data sheets to

American Popcorn.  (Ex. 18, App. 100-108 Givaudan Invoices to American Popcorn); (Ex. 19,

App. 0111-0118 Stipulation of facts re: diacetyl content and Givaudan formulas); (Ex. 4, App.

0016-0031, MSDSs).

34.     In total, Givaudan sold 26,750 lbs to American Popcorn from August 13, 1992 till

the end of Plaintiff's employment.  (Ex. 18, App. 100-108 Givaudan Invoices to American

Popcorn); (Ex. 19, App. 0111-0118 Stipulation of facts re: diacetyl content and Givaudan

formulas); (Ex. 4, App. 0016-0031, MSDSs).

35.     Givaudan's sales records demonstrate sales of diacetyl-containing flavorings to

American Popcorn totaling 29,440 lbs from August 13, 1992 till the end of Plaintiff's

employment. (Ex. 18A, App. 0098A, Givaudan Sales Chart to American Popcorn).

36.     Greg Hoffman testified to the following:

Q     And Mr. Zarro showed you the material safety data sheet for Butter Flavor
      247027 and 247028.  Those indicated that no respiratory protection was
      required.  Did you observe that?

A     Yes, sir.

8

Q        And were you aware that at the Fries & Fries plant, that anytime that someone was in a room where diacetyl was present, respirators were to be worn?

A        I was not aware of that.
---
Q.       Givaudan, in their plant, was saying any time diacetyl was in the mix, a respirator is to be used. Did they ever tell you anything different?
---
THE WITNESS: No.

(Ex. 2, App. 0008; 0010, 3/19/08 Deposition of Greg Hoffman, pp. 62-63, 79); (Ex. 18, App. 100-108 Givaudan Invoices to American Popcorn); (Ex. 19, App. 0111-0118 Stipulation of facts re: diacetyl content and Givaudan formulas); (Ex. 4, App. 0016-0031, MSDSs).

37.      Plaintiff Marlin Herbst was completely unaware that he should be wearing a respirator in the presence of diacetyl, much less that Givaudan had known since 1992, that respirators were mandatory in the presence of diacetyl. (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶¶4-10); (Ex. 23, App. 0129, 8/13/92 Tastemaker Operational Procedures for Natural & Artificial Diacetyl Spray Drying).

38.      Marlin Herbst was unaware that Givaudan's internal Operating Procedure must be followed during the usage of Diacetyl to reduce the risk of injury to personnel. (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶4).

39.      Marlin Herbst was unaware that Givaudan's internal Operating Procedure required that "Any room containing Diacetyl in a liquid state must be labeled respirator required;" "Avoid heating or flame at all times;" and, "Whenever material is in tank, lids must be closed. If ventilation (mechanical) is not connected to tank or is unavailable, a respirator must be used at all time while in the room". (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶¶ 7-9).

40.      Givaudan and American Popcorn were in communication with each other regarding Givaudan's products and both visited each other's plants on several occasions. (Ex.

24, App. 0131-0143, Compilation of Correspondence between American Popcorn and Givaudan and Notes re: American Popcorn's Visits to Givaudan Plant); (Ex. 6, App.0036, 11/30/05 Deposition of Greg Hoffman, p. 208); (Ex. 25, App. 0147, 3/19/08 Deposition of Dale Hartshorn, p. 55) (confirming Givaudan salesperson Bob Burns visited American Popcorn quarterly); (Ex. 9, App. 0048, 12/1/05 Deposition of Dale Hartshorn, p. 68).

41.    Dale Hartshorn, American Popcorn's microwave product manager, testified that Givaudan said nothing to American Popcorn about the hazards of its diacetyl-containing flavorings. (Ex. 25, App. 0146-0147, 3/19/08 Deposition of Dale Hartshorn, pp. 7, 43-44).

### BOB BURNS- GIVAUDAN'S SALEMAN TO AMERICAN POPCORN

42.    Mr. Burns, the Givaudan salesman to American Popcorn, was never shown the Tastemaker Operational Procedures for handling diacetyl and had no idea there were special safety precautions at Tastemaker for working around diacetyl.  (Ex. 15, App. 0086-0088, 7/11/06 Deposition of Robert Burns, pp. 33-39).

43.    The butter flavor initially sold to American Popcorn was a paste/liquid product. (Ex. 15, App. 0087, 7/11/06 Deposition of Robert Burns, at p. 34).

44.    The butter flavor sold to American Popcorn by Givaudan was to be heated.  (Ex. 15, App. 0087, 7/11/06 Deposition of Robert Burns, at p. 34).

45.    No one from Givaudan told him about the need to follow these safety procedures when working with diacetyl, even though Givaudan knew that the butter flavor sold to American Popcorn was a paste and was going to be heated.  (Ex. 15, App. 0086-0088, 7/11/06 Deposition of Robert Burns, pp. 33-39, *Cf* Tastemaker Operational Procedures "Avoid heating or flame at all times") (Ex. 23, App. 0129, 8/13/92 Tastemaker Operational Procedures for Natural & Artificial Diacetyl Spray Drying).

46.     Burns never had a conversation with American Popcorn about the need for respirators to be worn when diacetyl was present or to avoid heating it at all times.  (Ex. 15, App. 0087-0088, 7/11/06 Deposition of Robert Burns, pp. 35-38).

47.     Burns never told American Popcorn they were using Givaudan's products improperly.  (Ex. 15, App. 0084, 7/11/06 Deposition of Robert Burns, p. 25); that inhaling fumes or dust from butter flavoring could cause severe lung disease (App. 0085, p. 26); nor did he give any criticism to American Popcorn in any way related to butter flavoring.  (*Id*. at 26).

## BRONCHIOLITIS OBLITERANS AT THE GIVAUDAN PLANT

48.     In 1992, Tastemaker, a partnership in which Givaudan's predecessor was a general partner, was confronted by a potentially significant health hazard issue of three workers diagnosed within bronchiolitis obliterans within its own plant in Cincinnati, Ohio.  (Ex. 20, App. 0119, 11/17/92 Letter from Coroner's office to Tastemaker); (Ex. 21, App. 0120-0124, Handwritten notes re: 1992 cases).

49.     Givaudan said nothing about the disease within its own plant to American Popcorn. (Ex. 3, App. 0014,  3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.* p.134).

50.     As a result of its discovery, Givaudan created a task force to investigate the potential for lung injury at its plant.  (Ex.22, App. 0125-0128, 2/18/93 Memorandum re: Occupational Health Concern).

## OSHA HAZARD COMMUNICATION STANDARD

51.     The OSHA Hazard Communication Standard, 29 C.F.R. § 1910.1200, required the following:

Each material safety data sheet is to include the following:

a.      The health hazards of the hazardous chemical, including signs and symptoms of exposure, and any medical conditions which are generally recognized as being aggravated by exposure to the chemical. 1910.1200(g)(2)(iv).

b.      Any generally applicable precautions for safe handling and use which are known to the chemical manufacturer, importer or employer preparing the material safety data sheet, including appropriate hygienic practices, protective measures during repair and maintenance of contaminated equipment, and procedures for clean-up of spills and leaks.  1910.1200(g)(2)(viii).

c.      The date of preparation of the material safety data sheet or the last change to it.  1910.1200(g)(2)(xi).

d.      The chemical manufacturer, importer or employer preparing the material safety data sheet shall ensure that the information recorded accurately reflects the scientific evidence used in making the hazard determination. If the chemical manufacturer, importer or employer preparing the material safety data sheet becomes newly aware of any significant information regarding the hazards of a chemical, or ways to protect against the hazards, this new information shall be added to the material safety data sheet within three months. If the chemical is not currently being produced or imported the chemical manufacturer or importer shall add the information to the material safety data sheet before the chemical is introduced into the workplace again.

(Ex. 26, App. 0152, 29 C.F.R. § 1910.1200(g)(5).

52.      Givaudan knew that it had a duty to comply with OSHA. (Ex. 27, App. 0157, 12/16/08 Deposition of Fred Stults, p. 20).

## RELIANCE ON GIVAUDAN

53.      American Popcorn relied on its manufacturers to provide accurate information regarding health hazards of their products.

Q.      Now, did you have any sense back during this entire time period that this was going on that Givaudan was looking into this and had a team of doctors working on it and were examining the effect that diacetyl had upon workers?

A.      Can you give me a time frame?

Q.       '92 to '95.

A.    No, I was not aware of that.

Q.    Would you have liked to have known that?

A.    Yes, sir.

Q.    And if they had told you there was any question about this material, would you have taken precautions for your workers?

A.    We would have taken appropriate precautions, yes.

Q.    In other words, if they'd told you that this is possible, it's not been proven, but it's possible, would you have taken the precautions to protect your workers?

A.    If it was possible that it could cause worker injury, absolutely.  We would have taken additional precautions.

Q.    **I mean, from your standpoint, is there anything more important than the health of your employees, Mr. Hoffman?**

A.    **No, sir.**

(Ex. 3, App. 0015, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.* p. 138-139) (emphasis added).

54.    American Popcorn would not have risked employees' health working around butter flavors if it had known the dangers.  (Ex. 3, App. 0013, 3/3/09 Trial Transcript of Greg Hoffman in *Kuiper v. IFF, Inc., et al.* p. 128).

55.    Plaintiff Marlin Herbst also relied upon Givaudan's misrepresentations to his prejudice.  (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶¶11-12).

56.    Plaintiff Marlin Herbst would have taken steps to protect himself if Givaudan had properly warned American Popcorn and its employees that it knew that diacetyl was "harmful" and "capable of producing systemic toxicity" and that respirator use was mandatory in the presence of diacetyl.  (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶ 11).

57.     If Plaintiff Marlin Herbst had known of the hazards of Givaudan's diacetyl-containing flavorings, he would have worn a respirator around Givaudan's diacetyl-containing flavorings.  (Ex. 10, App. 0054, Affidavit of Marlin Herbst at ¶ 11).

58.     Plaintiff Marlin Herbst has been diagnosed with bronchiolitis obliterans as a result of his exposures to diacetyl-containing flavorings while employed at the American Popcorn plant. (Ex. 10, App. 0054, Affidavit of Marlin at ¶13);(Ex. 28, App. 0159-0181, Affidavit of Dr. Charles Pue, with accompanying reports).

Respectfully submitted,

*s/ J'Nan C. Kimak*
KENNETH B. McCLAIN (admitted pro hac vice)
J'NAN C. KIMAK (admitted pro hac vice)
ANDREW K. SMITH (admitted pro hac vice)
MICHAEL S. KILGORE (admitted pro hac vice)
NICHELLE L. OXLEY (admitted pro hac vice)
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050
(816) 836-8699 fax
kbm@hfmlegal.com
jck@hfmlegal.com
aks@hfmlegal.com
msk@hfmlegal.com
nlo@hfmlegal.com

AND

DENNIS M. McELWAIN          AT0005253
JAY M. SMITH                AT0007387
SMITH & McELWAIN LAW OFFICE
505 5th Street, Suite 530
Sioux City, Iowa 51101
(712) 255-8094
(712) 255-3825 fax
smitmcel@aol.com
**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of March, 2018, I electronically filed the foregoing with the Court using the Court's CM/ECF system which sends notification of same to all counsel of record also listed below:

*s/ J'Nan C. Kimak*
**ATTORNEY FOR PLAINTIFFS**

Robert M. Slovek
Matthew E. Enenbach
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
(402) 346-1148 fax
Robert.Slovek@KutakRock.com
matthew.enenbach@kutakrock.com

and

Kimberly E. Ramundo
Stephen J. Butler
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, OH  45202
(513) 352-6587
(513) 251-4771
Kim.Ramundo@thompsonhine.com
Steve.butler@thompsonhine.com
**ATTORNEYS FOR GIVAUDAN**
**FLAVORS CORPORATION**

Douglas L Phillips
Klass Law Firm, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Ste. 290
Sioux City, IA 51106
(712) 252 1866
(712) 252 5822 fax
phillips@klasslaw.com

and

Jason Meyer
Christopher J. Mulvaney
Gordon & Rees
101 West Broadway, Suite 2000
San Diego, CA 92101
619-270-7858 Telephone
(619) 696-7124 Facsimile
jmeyer@gordonrees.com
cmulvaney@gordonrees.com
**ATTORNEYS FOR EMORAL, INC.**