**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| MARLIN HERBST,<br><br>    Plaintiff,<br>vs.<br><br>GIVAUDAN FLAVORS CORPORATION and EMORAL, INC., f/k/a Polarome International, Inc.,<br><br>    Defendants. | No. C 17-4008-MWB<br><br>**OPINION AND ORDER REGARDING DEFENDANT GIVAUDAN'S MOTIONS TO EXCLUDE EXPERTS AND FOR SUMMARY JUDGMENT ON ALL CLAIMS** |

_____

**TABLE OF CONTENTS**

I. INTRODUCTION..................................................................... *1*

II. LEGAL ANALYSIS ................................................................. *3*
 A. *The Challenges To Experts* ............................................... *3*
  1. Standards for admissibility of expert opinions ................. *3*
  2. Application of the standards ........................................ *6*
 B. *Summary Judgment* ........................................................ *8*
  1. Applicable standards ................................................. *8*
  2. Application of the standards ...................................... *10*

III. CONCLUSION ..................................................................... *11*

## *I. INTRODUCTION*

In this case, plaintiff Marlin Herbst alleges that he suffers from bronchiolitis obliterans (aka "popcorn lung") and/or other lung or respiratory diseases or impairments

from working with butter flavorings containing diacetyl at the American Popcorn Company (APC) plant in Sioux City, Iowa, between 1991 and August 1993. On January 27, 2017, Herbst brought products liability claims under strict liability and negligence and a claim of breach of implied warranties against various "manufacturing defendants," which are companies that allegedly designed, manufactured, distributed, and/or sold diacetyl-containing butter flavorings to APC, and against various "diacetyl defendants," which are companies that allegedly designed, manufactured, marketed, distributed, and/or sold diacetyl that was used by APC. The remaining "manufacturing defendant" is Givaudan Flavors Corporation, and the remaining "diacetyl defendant" is Emoral, Inc.

This case is now before me on four motions by Givaudan: (1) its September 4, 2018, First *Daubert* Motion To Exclude General Causation Testimony By Plaintiff's Expert, relating to Dr. Robert Harrison; (2) its September 4, 2018, Second *Daubert* Motion To Exclude The Testimony And Opinions Of Charles Pue, M.D. (Plaintiff's Proffered Expert On Plaintiff's Alleged Exposures To Diacetyl And Specific Causation); (3) its September 4, 2018, Third *Daubert* Motion To Exclude Warnings Testimony And Opinions By Plaintiff's Expert, again relating to Dr. Robert Harrison; and (4) its September 4, 2018, Motion For Summary Judgment As To All Claims. After various extensions, resistances and replies have now been filed, and the motions are ripe for consideration.

Givaudan requests oral arguments on each of its motions, but I conclude that the parties' written arguments and supporting materials are sufficient for me to resolve the pending motions.[1] Therefore, all four motions are deemed fully submitted without oral arguments.

---

[1] Indeed, the briefs and supporting materials for these motions can only be described as voluminous. As one of the parties observed, more is not necessarily better, although I believe that observation applies to *both* parties.

## II. LEGAL ANALYSIS

### A. The Challenges To Experts

Givaudan relies on my anticipated exclusion of the experts' challenged opinions among its grounds for summary judgment. Consequently, I will begin my consideration of the pending motions with Givaudan's challenges to experts.

#### 1. *Standards for admissibility of expert opinions*

As the Supreme Court has explained, Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and requires the district court to serve as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).[2] The Eighth Circuit Court of Appeals has stated that the standard for what expert testimony is relevant and helpful under Rule 702 is "low," that is, that the expert's evidence should be admitted if it has any tendency to make a fact of consequence more

---

[2] More specifically, Rule 702 of the Federal Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*;
>
> (b) the testimony is *based on sufficient facts or data*;
>
> (c) the testimony is the *product of reliable principles and methods*; and
>
> (d) the expert has *reliably applied the principles and methods* to the facts of the case.

FED. R. EVID. 702 (emphasis added).

3

or less probable. *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014) (citing FED. R. EVID. 401). In short, to satisfy the relevance requirement of Rule 702 and *Daubert*, "'the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.'" *Smith v. Bubak*, 643 F.3d 1137, 1138 (8th Cir. 2011) (quoting *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010)). For example, expert testimony is relevant where such testimony is required to establish an element of a claim. *See, e.g., Barrett*, 606 F.3d at 981 (concluding that a plaintiff in a toxic tort strict liability case is required to establish causation through expert testimony).

I recognize that, under *Daubert*, I have a duty to perform a "gatekeeper" function, under Rule 702 of the Federal Rules of Evidence, so that only expert testimony that is relevant and reliable is admitted. 509 U.S. at 589. More specifically,

> The objective of the *Daubert* inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). [T]his is a flexible, case-specific inquiry. "The trial court ha[s] to decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Id.* at 156, 119 S.Ct. 1167 (quotation omitted); *see* Fed. R. Evid. 702 and Advisory Committee Notes.

*American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722-23 (8th Cir. 2015). I also recognize that this "gatekeeper" function under *Daubert* requires me to "make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (quoting *Daubert*, 509 U.S. at 592-93).

4

I must also take into account Rule 704 of the Federal Rules of Evidence, concerning the scope of expert opinions. As the Eighth Circuit Court of Appeals has explained,

> Rule 704(a) provides that expert evidence is not inadmissible because it embraces an ultimate issue to be decided by the jury. If the subject matter is within the jury's knowledge or experience, however, the expert testimony remains subject to exclusion "because the testimony does not then meet the helpfulness criterion of Rule 702." [*United States v.*] *Arenal*, 768 F.2d [263,] 269 [(8th Cir. 1985)]. Opinions that "merely tell the jury what result to reach" are not admissible. Fed.R.Evid. 704 advisory committee's note.

*Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010); *accord United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) ("'Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous.'" (quoting *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) (per curiam))); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (noting that, although Rule 704(a) allows expert testimony that "embraces an ultimate issue to be decided by the trier of fact," it does not allow "[o]pinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach'" (quoting FED. R. EVID. 704, Advisory Committee Note)). Thus, to the extent that an expert lays a proper foundation by demonstrating an adequate basis for an opinion, even an opinion about an ultimate issue, then such an opinion may be admissible at trial. On the other hand, "'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the

5

expert.'" *American Auto. Ins. Co.*, 783 F.3d at 725 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).[3]

Finally, the Eighth Circuit Court of Appeals has also observed that expert evidence, even if relevant, is subject to exclusion if its potential for prejudice substantially outweighs its probative value. *Holmes*, 751 F.3d at 851; *see also* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by its potential for prejudice); *Coutentos*, 651 F.3d at 821 (considering whether the district court had properly excluded expert evidence under Rule 403, after affirming exclusion of the expert's evidence as irrelevant under Rule 702).

### 2. *Application of the standards*

Contrary to Givaudan's contentions, the challenged experts' opinions are not so poorly supported as to amount to nothing more than *ipse dixit*. *See American Auto. Ins. Co.*, 783 F.3d at 725. Rather, after reviewing Herbst's extensive responses to the motions to exclude the testimony of these experts, my "preliminary assessment" is that these experts are qualified to state their proffered opinions, the reasoning and methodology underlying the challenged opinions are scientifically valid, and the experts' reasoning and methodology can be applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93 (first step in the court's "gatekeeper" function under Rule 702); *Kudabeck*, 338 F.3d at 860 (explaining that the "gatekeeper function" involves this "preliminary assessment"). The challenged opinions meet the "low" standard for admissibility under

---

[3] For the sake of comparison, I note that a lay witness may not opine on an ultimate factual issue, *see* FED. R. EVID. 704(a); *Peters v. Woodbury Cty.*, Iowa, 979 F. Supp. 2d 909, 922-23 (N.D. Iowa 2013), *aff'd sub nom. Peters v. Risdal*, 786 F.3d 1095 (8th Cir. 2015), but a lay witness is not entirely precluded from offering opinions, if those opinions are "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

Rule 702 in that they make facts of consequence more or less probable. *Holmes*, 751 F.3d at 851.

I am also convinced that the testimony of these experts is relevant and will aid the trier of fact. *Daubert*, 509 U.S. at 592 (second step in the analysis); *Kudabeck*, 338 F.3d at 860 (same). For example, while Givaudan contends that neither Dr. Harrison's "general causation" opinions nor Dr. Pue's "specific causation" opinions should be admissible, because neither expert can identify the dosages at which diacetyl may be harmful or the dosages to which Herbst was ever exposed, the Eighth Circuit Court of Appeals has recognized that a plaintiff "d[oes] not need to produce a mathematically precise table equating levels of exposure with levels of harm in order to show that [he] was exposed to a toxic level of [a chemical], but only evidence from which a reasonable person could conclude that [his] exposure probably caused [his] injuries." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 928 (8th Cir. 2001) (internal quotation marks and citations omitted). Although there may be some "gaps" between the data identified and these experts' causation opinions, I cannot say that there is "'simply too great an analytical gap' . . . to support admissibility." *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 897 (8th Cir. 2008) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Givaudan argues that Dr. Harrison's "warnings" opinions are inadmissible, to the extent that he opines about what Givaudan's predecessor company "should have known," because what a company "should have known" does not require expert explanation, *see Lee*, 616 F.3d at 808–09, but I disagree. Under Iowa law, a manufacturer of a product, such as Givaudan (or its predecessor, Tastemaker), is held to have the knowledge of experts concerning the hazards of their products. *See Beerman v. Manville Corp. Asbestos Disease Compensation Fund*, 496 N.W.2d 247, 251-252 (Iowa 1993). Thus, Dr. Harrison may properly opine on what an expert would infer about hazards of a

product and the need for warnings from information shown to be available to the manufacturer, which is beyond the ken of most jurors.

Indeed, this is yet another case in which excluding these experts' challenged opinions would "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence," *United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003), and one in which "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are not only "traditional," but "appropriate" means of attacking what Givaudan contends are deficiencies in these experts' evidence. *Daubert*, 509 U.S. at 596; *Vesey*, 338 F.3d at 917. Givaudan's challenges indicate the bases for attempting to impeach the experts, but not for excluding their opinions entirely. Ultimately, whether specific expert opinions are admissible will depend upon the form, manner, and—most importantly—the *context* in which those opinions are offered at trial rather than on the parties' *characterizations* of those opinions pretrial.

Givaudan's three *Daubert* motions challenging expert opinions are **denied**.

### B. *Summary Judgment*

Givaudan also seeks summary judgment on all of Herbst's claims. Herbst denies that summary judgment is appropriate on any of his claims.

#### 1. *Applicable standards*

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burdens, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, --- U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43. Summary judgment is particularly appropriate, however, when only questions of law are involved, rather than factual issues that may or

may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

### 2. *Application of the standards*

I find that Herbst has satisfied his burden in resisting summary judgment by pointing to evidence generating genuine issues of material fact on his claims. *See Torgerson*, 643 F.3d at 1042. This is so, for example, because my denial of Givaudan's challenges to expert opinions means that Herbst is not lacking necessary expert opinions to support some of his claims. Also, while Iowa does not recognize a strict liability claim for a design defect, *see, e.g., Scott v. Dutton-Lainson Co.*, 774 N.W.2d 501, 504 (Iowa 2009), it most certainly recognizes design defect claims without designating them either "strict liability" or "negligence," *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 169 (Iowa 2002), and Herbst has pointed to evidence to raise a jury question on such a claim. Looking at the *evidence* in the record, rather than Givaudan's *characterizations* of that evidence, a rational juror could conclude that Givaudan or its predecessor knew or should have known while Herbst was still working at American Popcorn that a warning was required for diacetyl, but Givaudan failed to provide such a warning. *See Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 289–290 (Iowa 1994). The same examination of the *evidence* shows that Herbst has generated genuine issues of material fact on his other claims and his prayer for punitive damages, as well.

These conclusions are offered with the caveat that I likely would not find for Herbst, if I were the trier of fact, and I would not do so for many of the reasons that Givaudan has asserted. Nevertheless, it is black letter law that, at summary judgment, "a court 'should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.'" *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996), in turn citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986)). Rather, I must determine whether there are genuine issues of material fact for trial. *Id*. There are many such genuine issues of material fact on the record presented, here, making summary judgment inappropriate.

Givaudan's Motion For Summary Judgment On All Claims is **denied.**

### III.   CONCLUSION

Upon the foregoing,

1.   Givaudan's September 4, 2018, First *Daubert* Motion To Exclude General Causation Testimony By Plaintiff's Expert (docket no. 142), relating to Dr. Robert Harrison, is **denied**;

2.   Givaudan's September 4, 2018, Second *Daubert* Motion To Exclude The Testimony And Opinions Of Charles Pue, M.D. (Plaintiff's Proffered Expert On Plaintiff's Alleged Exposures To Diacetyl And Specific Causation) (docket no. 146) is **denied**;

3.   Givaudan's September 4, 2018, Third *Daubert* Motion To Exclude Warnings Testimony And Opinions By Plaintiff's Expert (docket no. 149), again relating to Dr. Robert Harrison, is **denied**; and

4.   Givaudan's September 4, 2018, Motion For Summary Judgment As To All Claims (docket no. 150) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 3rd day of December, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA